IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JOE HAND PROMOTIONS, INC., | : | |
| Plaintiff, | : | |
| v. | : | Case No. TDC-19-0458 |
| MARIA AGUILAR, *et al.*, | : | |
| Defendants. | : | |

**REPORT AND RECOMMENDATION**

This Report and Recommendation addresses the Motion for Default Judgment ("Motion") filed by Plaintiff Joe Hand Promotions, Inc. against Defendants Maria Aguilar and Sofia & Gicelle, Inc., doing business as Fast Eddie's Restaurant Billiard & Sports Bar. (ECF No. 19.) On August 9, 2019, in accordance with 28 U.S.C. § 636 and Local Rule 301, Judge Chuang referred this case to me for a report and recommendation on Plaintiff's Motion. (ECF No. 21.) I find that a hearing is unnecessary in this case. *See* Fed. R. Civ. P. 55(b)(2); Loc. R. 105.6. For the reasons set forth below, I respectfully recommend that Plaintiff's Motion for Default Judgment be granted in part and denied in part.

**I.    FACTUAL AND PROCEDURAL HISTORY**

On February 15, 2019, Plaintiff commenced this action against Defendants, alleging violations of the Communications Act of 1934, as amended, 47 U.S.C. §§ 553 (unauthorized reception of cable services) and 605 (unauthorized publication or use of communications), and the Copyright Act, 17 U.S.C. § 501. (ECF No. 1.) The Complaint states that Plaintiff held "the exclusive rights of distribution and public performance as to commercial establishments for the Mayweather vs McGregor Match, including all undercard marches and the entire television Broadcast," which was broadcast on August 26, 2017 (the "Program"). (*Id.* ¶ 6.) In addition,

Plaintiff was the copyright owner of the Program. (*Id.* ¶ 41.) Plaintiff entered into agreements with various commercial establishments that permitted the businesses to exhibit the Program for their patrons. (*Id.* ¶ 23.) Defendants did not enter into such an agreement with Plaintiff to exhibit the Program at their business, Fast Eddie's Restaurant Billiard & Sport Bar (the "Establishment").[1] (*Id.* ¶ 14.) Without Plaintiff's authorization and "with full knowledge that the [Program] was not to be received and exhibited by entities unauthorized to do so," Defendants displayed the Program at the Establishment "willfully and for purposes of direct or indirect commercial advantage or private financial gain." (*Id.* ¶¶ 26-28.) Service of process was effected on Defendants. (ECF Nos. 9 & 10.) Defendants did not file an answer or responsive pleading within the requisite time period. Plaintiff moved for entry of default on May 30, 2019. (ECF No. 13.) The Clerk's Entry of Default as to each of the Defendants was entered on June 3, 2019. (ECF Nos. 15 & 16.) Thereafter, Plaintiff filed the instant Motion (ECF No. 19).

## II. LEGAL ANALYSIS

### A. Standard for Entry of Default Judgment

In determining whether to award a default judgment, the Court accepts as true the well-pleaded factual allegations in the complaint as to liability. *See Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780-81 (4th Cir. 2001); *United States ex rel. Durrett-Sheppard Steel Co. v. SEF Stainless Steel, Inc.*, No. RDB-11-2410, 2012 WL 2446151, at *1 (D. Md. June 26, 2012). Nonetheless, the Court must consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law. *United States v. Redden*, No. WDQ-09-2688, 2010 WL 2651607, at *2 (D. Md. June 30, 2012) (citing *Ryan*, 253 F.3d at 790). Although the Fourth Circuit has a "strong policy that cases be

---

[1] According to Plaintiff's Complaint, Defendant Maria Aguilar was "the individual with supervisory capacity and control over the activities occurring within the Establishment on August 26, 2017." (ECF No. 1 ¶ 9.)

decided on the merits," *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993), default judgment "is appropriate when the adversary process has been halted because of an essentially unresponsive party." *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005). If the Court determines that liability is established, the Court must then determine the appropriate amount of damages. *CGI Finance, Inc., v. Johnson*, No. ELH-12-1985, 2013 WL 1192353, at *1 (D. Md. March 21, 2013). The Court does not accept factual allegations regarding damages as true, but rather must make an independent determination regarding such allegations. *Durrett-Sheppard Steel Co.*, 2012 WL 2446151, at *1.

Rule 55 of the Federal Rules of Civil Procedure provides that "[i]f, after entry of default, the Plaintiff's Complaint does not specify a 'sum certain' amount of damages, the court may enter a default judgment against the defendant pursuant to Fed. R. Civ. P. 55(b)(2)." A plaintiff's assertion of a sum in a complaint does not make the sum "certain" unless the plaintiff claims liquidated damages; otherwise, the complaint must be supported by affidavit or documentary evidence. *United States v. Redden*, No. WDQ-09-2688, 2010 WL 2651607, at *2 (D. Md. June 30, 2012). Rule 55(b)(2) provides that "the court may conduct hearings or make referrals . . . when, to enter or effectuate judgment, it needs to . . . determine the amount of damages." The Court is not required to conduct an evidentiary hearing to determine damages, however; it may rely instead on affidavits or documentary evidence in the record to determine the appropriate sum. *See, e.g.*, *Mongue v. Portofino Ristorante*, 751 F. Supp. 2d 789, 795 (D. Md. 2010).

**B.     Liability**

Plaintiff's Complaint seeks damages under two statutes for Defendants' violation of the Communications Act, 47 U.S.C. § 605 and 47 U.S.C. § 553. As Plaintiff concedes, however (*see* ECF No. 19-5 at 9), courts in this district have previously held that plaintiffs cannot recover under both statutes for the same conduct, and generally allow for recovery under § 605 as it

3

provides for the greater recovery. *See J & J Sports Productions, Inc. v. Royster, et al.*, No. RWT-11-1597, 2014 WL 992779, at *3 (D. Md. Mar. 13, 2014); *J & J Sports Productions, Inc. v. Frank Little Enterprises, LLC*, No. DKC-12-0997, 2012 WL 6019366, at *2 (D. Md. Nov. 30, 2012).

Taking as true the well-pleaded allegations of the Complaint (ECF No. 1), Defendants' liability is readily established in this case. To prove a violation of § 605(a), Plaintiff must show that Defendants, without authorization, received and divulged the Program. *See That's Entm't, Inc. v. J.P.T., Inc.*, 843 F. Supp. 995, 999 (D. Md. 1993). Plaintiff held the exclusive rights for the distribution of the Program at commercial establishments. (ECF No. 1 ¶ 6.) Defendants did not obtain Plaintiff's authorization to broadcast the program at the Establishment. (*Id.* ¶¶ 26-28.) Defendants unlawfully exhibited the Program to the patrons at the Establishment. (*Id.*) In addition, Plaintiff's investigator observed that the Establishment was charging a $30 cover charge at the time of the Program and that there were approximately 60 patrons in the Establishment. (ECF No. 19-2 at 5-6.) Accordingly, I find that Plaintiff has stated a claim for relief under 47 U.S.C. § 605 (Count I). Because Plaintiff cannot recover under both Count I and Count II of the Complaint, I recommend that Plaintiff's Motion for Default Judgment be granted as to Count I (47 U.S.C. § 605) and denied as to Count II (47 U.S.C. § 553).

In Count III, Plaintiff claims that Defendants are liable for copyright infringement. (ECF No. 1 ¶¶ 40-49.) "To establish copyright infringement liability, a plaintiff must prove two elements: (1) ownership of the copyright; and (2) copying of original constituent elements by the defendant." *Malibu Media, LLC v. Redacted*, No. DKC-15-0750, 2016 WL 3668034, at *2 (D. Md. July 11, 2016) (citing 17 U.S.C. § 501(a) and *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)). "[T]he Copyright Act does not require that the infringer know that he is

infringing or that his conduct amount to a willful violation of the copyright owner's rights." *CoStar Grp., Inc. v. LoopNet, Inc.*, 373 F.3d 544, 549 (4th Cir. 2004) (noting that while copyright infringement is a strict liability tort, "it nonetheless requires conduct by a person who causes in some meaningful way an infringement").

Accepting the well-pleaded allegations of the Complaint as true, I find that Plaintiff has established Defendants' liability for copyright infringement. Plaintiff owned a valid copyright in the Program because it held the exclusive right to distribute and perform the Program in commercial establishments.[2] (ECF No. 1 ¶ 42.) Defendants did not "obtain[] the proper authority or license from Plaintiff to publicly exhibit" the Program. (*Id.* ¶ 43.) In violation of Plaintiff's rights, Defendants publicly displayed the Program at the Establishment on August 26, 2017. (*Id.* ¶ 44.) Because Plaintiff has established that Defendants infringed Plaintiff's copyrights, I recommend that Plaintiff's Motion be granted as to Count III (17 U.S.C. § 501).

### C. Damages

#### 1. Statutory damages

Having determined that Plaintiff has established liability, it is now appropriate to determine the damages to which Plaintiff is entitled. Plaintiff acknowledges that for its Communications Act claims, it cannot recover under both statutes for the same conduct, and elects to recover under only 47 U.S.C. § 605. (ECF No. 19-55 at 15.) Specifically, Plaintiff requests statutory damages pursuant to § 605(e)(3)(C)(i)(II). (*Id.*) Judge Nickerson set forth the relevant considerations in the statutory damages analysis under 47 U.S.C. § 605(e)(3)(C)(i)(II) in *J & J Productions, Inc. v. Quattrocche*, No. WMN-09-3420, 2010 WL 2302353, at *1 (D. Md. June 7, 2010) (internal citations omitted):

---

[2] Plaintiff's Complaint also indicates that it was issued a Certificate of Copyright Registration by the US. Copyright Office. (ECF No. 1 ¶ 41.)

5

Here, Plaintiff has elected an award of statutory damages, which under 47 U.S.C. § 605(e)(3)(C)(i)(II) entitles Plaintiff to an award "as the court considers just," between a range of $1,000 to $10,000 for each unauthorized reception and publication of a radio communication by the defendants in violation of section 605(a). Courts in this Circuit have used two different approaches to exercising its discretion in awarding damages under § 605(e)(3)(C)(i)(II). The first approach has two variations. This approach involves multiplying a certain amount by either the number of patrons observed in the defendant's establishment at the time the program was shown or by the maximum occupancy of the establishment. The first variation seeks to approximate the defendant's profits or the plaintiff's lost earnings assuming each patron would have ordered the event for residential viewing. The second variation seeks to award the license fee the defendant would have paid if it had legally purchased the event for exhibition. The other approach to calculating damages is to award a flat sum per violation.

Plaintiff seeks statutory damages in the amount of $10,000, which is the maximum amount available under the statute. (ECF No. 19-5 at 15.) However, courts in this district have previously accepted the cost to purchase a license to broadcast a program as the appropriate amount of statutory damages. *See, e.g. Henriquez Batres, Inc.*, 2017 WL 2937936, at *3; *J & J Sports Productions, Inc. v. Plaza Del Alamo, Inc.*, No. TDC-15-0173, 2016 WL 153037, at *3 (D. Md. Jan. 12, 2016). Plaintiff does not state any reason for the Court to deviate from this practice. Plaintiff has submitted evidence that the Establishment had the capacity to accommodate 101-200 patrons. (ECF No. 19-2 at 6.) The cost to purchase a license for a commercial establishment with the capacity to accommodate 200 patrons was $6,700. (*Id.* at 1.) I recommend that the Court award Plaintiff $6,700 in statutory damages under 47 U.S.C. § 605(e)(3)(C)(i)(II).

2. **Enhanced damages**

In determining whether enhanced damages are warranted, courts have examined several factors: "(1) evidence of willfulness; (2) repeated violations over an extended period of time; (3) substantial unlawful monetary gains; (4) advertising the broadcast; and (5) charging an admission fee or charging premiums for food and drinks." *Quattrocche*, 2010 WL 2302353, at

6

*2. Here, Plaintiff seeks enhanced damages in the amount of $30,000 (ECF No. 19-5 at 15), which is three times the amount of the statutory damages it seeks. The circumstances of Defendants' display of the Program counsels against awarding enhanced damages in this amount.

Although Plaintiff's private investigator was required to pay a cover charge of $30, Defendants' establishment was substantially below capacity during the Program (the private investigator estimated approximately 60 people were present), and there is no evidence that Defendants advertised that they would be showing the Program. There is also no evidence that Defendants have previously violated the statutes on which Plaintiff bases its claims. And there is no evidence that Defendants charged premiums for food and drinks. Nonetheless, in light of Defendants' having charged a cover charge and because Defendants' violation of Plaintiff's rights was willful, *see J & J Sports Prods., Inc. v. Castro Corp.*, No. AW-11-0188, 2011 WL 5244440, at *4 (D. Md. Nov. 1, 2011), "some enhanced damages are proper to deter potential future unlawful uses of communications." *J & J Sports Productions, Inc. v. Sabor Latino Rest., Inc.*, No. PJM-13-3515, 2014 WL 2964477, at *3 (D. Md. June 27, 2014). Defendants intercepted the Program and exhibited it for direct or indirect financial advantage. Defendants and others similarly situated must be deterred from doing so in the future.

Considering all of these factors, I find that enhanced damages in the amount of $15,200, which is slightly more than two times the amount of statutory damages that Plaintiff should receive, is appropriate. This amount is in line with the enhanced damages that have been awarded in similar cases. *See J & J Sports Prods., Inc. v. El Rodeo Rest. LLC*, No. TDC-16-3631, 2017 WL 6333874, at *3 (D. Md. Dec. 12, 2017) (awarding enhanced damages equal to two times the amount of statutory damages); *Plaza Del Alamo, Inc.*, 2016 WL 153037, at *4

(same); *J & J Sports Prods., Inc. v. Shiva Foods, Inc*, No. PWG-14-2049, 2015 WL 2452421, at *4 (D. Md. May 19, 2015) (same). Although other judges in this district have at times awarded enhanced damages based on a higher multiplier in cases where an establishment required a cover charge, *see J&J Sports Prods., Inc. v. KD Retail, Inc.*, No. PX-16-2380, 2017 WL 1450218, at *2 (D. Md. Apr. 20, 2017), using such a multiplier in this case would be excessive. To arrive at the $15,200 in enhanced damages that I recommend, I doubled Plaintiff's statutory damages and then added $1,800 to account for the $30 cover charge presumably required of the approximately 60 individuals that Plaintiff's investigator observed at the Establishment. (*See* ECF No. 19-2 at 5.) I recommend that the Court award $15,200 in enhanced damages.

### 3. Damages Under the Copyright Act

Plaintiff also seeks damages for its Copyright Act claim. (ECF No. 19-5 at 22-28.) Specifically, Plaintiff seeks $15,000 in statutory damages, pursuant to 17 U.S.C. § 504(c)(1), and $30,000 in enhanced damages, pursuant to 17 U.S.C. § 504(c)(2). I find that it "would be duplicative and excessive to award Plaintiff damages under § 504 in addition to statutory and enhanced statutory damages under § 605 for the same underlying conduct." *Joe Hand Promotions, Inc. v. Garcia-Nunez*, No. MC-18-1452, 2019 WL 2437456, at * 3 (D. Or. June 11, 2019). Although the Communications Act and the Copyright Act "vindicate[] separate rights," and an award of damages under the Communications Act does not preclude recovery under the Copyright Act, *see HBO v. Champs of New Haven, Inc.*, 837 F. Supp. 480, 484 (D. Conn. 1993), the Court has "broad discretion in setting the amount of statutory damages under the Copyright Act." *Joe Hand Promotions, Inc. v. Levin*, No. JPO-18-9389, 2019 WL 3050852, at *5-6 (S.D.N.Y. July 12, 2019) (internal quotation marks omitted). Here, the Court recommends that Plaintiff be awarded "a substantial sum under the Communications Act and has thereby

vindicated the aims of the Copyright Act to the extent that the two statutes' purposes overlap." *Id.*

Nonetheless, to the extent that the Copyright Act vindicates separate rights, I recommend that the Plaintiff be awarded $750.00 in statutory damages, the minimum required under 17 U.S.C. § 504(c)(1). I do not recommend that any enhanced damages be awarded to Plaintiff under the Copyright Act. Again, Plaintiff's damages for its injury under the Copyright Act are essentially the same as its damages for its injury under the Communications Act.

### D. Attorneys' Fees

Plaintiff seeks to recover its attorneys' fees and relevant costs incurred pursuant to 47 U.S.C. § 605(e)(3)(B)(iii) ("The Court . . . shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails."). (ECF No. 19-5 at 28-30.) Having found that Defendants violated § 605(a), Plaintiff is an "aggrieved party" who "prevailed" for purposes of § 605(e)(3)(B)(iii) and is entitled to recover its costs, including reasonable attorneys' fees. *See Mumford*, 2013 WL 210623, at *1. To determine what amount of attorneys' fees is reasonable, the Court calculates the lodestar amount (the product of the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate) and then determines whether an adjustment is warranted by considering the factors enunciated in *Brodziak v. Runyon*, 145 F.3d 194, 196 (4th Cir. 1998). These factors are:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Id*. The party seeking attorneys' fees bears the burden of proving the reasonableness of the amount sought. *Mumford*, 2013 WL 210623, at *2 (citing *Robinson v. Equifax Information Services, LLC*, 560 F.3d 235, 243-44 (4th Cir. 2009)).

Plaintiff has submitted an affidavit (ECF No. 19-3) in support of its claim for fees and costs. The affidavit attests that Plaintiff's attorneys expended a total of 3.3 hours working on this case, and that a paralegal spent 7.8 hours working on the case. At an hourly rate of $350.00 for Julie Lonstein, Esq. (a member of the bar for over 27 years), $275.00 for Alexander Lonstein, Esq. (a member of the bar for approximately one year), and $95.00 for Plaintiff's counsel's paralegal, Plaintiff incurred $1,686.00 in attorneys' fees.[3] Here, the Court finds that Ms. Lonstein's hourly rate is reasonable but that Mr. Lonstein's hourly rate is too high. Because Mr. Lonstein is apparently in his first year of practice, the Court will reduce his hourly rate to $150, which is at the bottom end of the rates recommended in the Local Rules. I find that the time that Plaintiff's attorneys and paralegal spent working on this case is reasonable. Accordingly, I recommend that Plaintiff be awarded attorneys' fees in the amount of $1,336.00.

In addition, Plaintiff incurred costs in the amount of $1,681.55, which are described in the affidavit (ECF No. 19-3 at 5.) Under the Communications Act, the Court is required to "direct the recovery of full costs . . . to an aggrieved party who prevails." 47 U.S.C. § 605(e)(3)(B). I recommend that the Court award Plaintiff $1,681.55 in costs, which includes Plaintiff's $400.00 filing fee, the $531.55 fee for service of process, and the $750.00 fee for Plaintiff's investigator. (ECF Nos. 19-3 at 5 & 19-4.)

---

[3] According to the guidelines set forth in Appendix B to the Court's Local Rules, a reasonable hourly rate for lawyers admitted to the bar for less than five years is $150-225, and a reasonable hourly rate for lawyers admitted to the bar for more than twenty years is $300-475. The Local Rules are available online at http://www.mdd.uscourts.gov/local-rules.

## III. CONCLUSION

In sum, I recommend that:

1. The Court grant Plaintiff's Motion for Default Judgment (ECF No. 19) against Defendants as to Counts I and III and deny the Motion as to Count II;

2. The Court award Plaintiff a total of $25,667.55 in damages (consisting of $6,700.00 in statutory damages under 47 U.S.C. § 605, $15,200.00 in enhanced damages under 47 U.S.C. § 605, $750.00 in statutory damages under 17 U.S.C. § 504, $1,336.00 in attorneys' fees, and $1,681.55 in costs) against Defendants.

I also direct the Clerk to mail a copy of this Report and Recommendation to the Defendants. Any objections to this Report and Recommendation must be served and filed within fourteen (14) days, pursuant to Fed. R. Civ. P. 72(b) and Local Rule 301.5(b).

August 29, 2019  /s/
Date  Timothy J. Sullivan
  United States Magistrate Judge